IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>) | CRIM. No. 08-96-E-BLW |
| Plaintiff,  )<br>)<br>) | MEMORANDUM DECISION |
| v.  )<br>)<br>) | AND ORDER |
| ALFRED WAHTOMY and  )<br>MARTIN AUCK,  )<br>) | |
| Defendants.  )<br>) | |

## INTRODUCTION

The Court has before it motions to quash filed by the Tribes and the Government. The Court heard oral argument on October 23, 2008, and granted the motions from the bench. This written decision supplements the Court's analysis from the bench.

## ANALYSIS

As part of his challenge to a Tribal Court search warrant, defendant Wahtomy served four subpoenas on Tribal members, including the Tribal Judge

**Order – page 1**

who issued the warrant, Judge Rosephine Coby. Wahtomy originally sought both documents and testimony, but has now dropped his request for documents, and narrowed his request for testimony to apply only to Judge Coby. The Tribes have filed a motion to quash the subpoenas on the ground of sovereign immunity.

The Tribes have sovereign immunity from suit, and this extends to protect them from complying with subpoenas in criminal cases. *See United States v James*, 980 F.3d 1314 (9th Cir. 1992). However, Tribal members in their individual capacity have no sovereign immunity. *See Puyallup Tribe, Inc. v. Washington Game Dept.*, 433 U.S. 165, 173 (1977).

At oral argument, defense counsel stated that he subpoenaed Judge Coby to inquire into three main areas: (1) her qualifications to sit as a Tribal Judge, including her education and past experience; (2) her experience with law enforcement, including the extent of her prior law enforcement experience, her relationship with Tribal police and the FBI, and whether evidence exists that she rubber-stamped warrant applications; and (3) any bias she may have against the defendant based upon her relationship as the daughter of the defendant's deceased ex-wife.

While Wahtomy subpoenaed Judge Coby in her official capacity, he argues now that he intends to serve her in her individual capacity and that his inquiry into

**Order – page 2**

the three areas listed above is an individual factual inquiry for which Judge Coby cannot claim sovereign immunity. The Court disagrees that this inquiry would be individual in nature. By questioning the integrity of Judge Coby, Wahtomy is essentially questioning the integrity of the entire Tribal Judicial system. For that reason, Judge Coby is entitled to the full measure of sovereign immunity accorded to the Tribes.

Wahtomy argues, however, that this sovereign immunity interferes with his Sixth Amendment right to compulsory process. The Sixth Amendment's guarantee of compulsory process is violated only when the criminal defendant is arbitrarily deprived of testimony that would have been relevant and material, and vital to the defense. *See Selam v. Warm Springs Tribal Corr. Facility*, 134 F.3d 948, 952 (9th Cir.1998). The Sixth Amendment does not guarantee the Defendant the right to embark on an unfocused fishing expedition. Rather, to be entitled to compulsory process, the defendant must make some plausible showing of how the testimony would be both material and favorable to his defense. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Wahtomy argues that Judge Coby's testimony on the three subjects listed above would be material to his claim that she was not "neutral and detached" as required by the Fourth Amendment. To satisfy the "plausible showing" standard

**Order – page 3**

required to obtain compulsory process under the Sixth Amendment to pursue investigation into this Fourth Amendment claim, Wahtomy must make a plausible showing that the evidence sought would establish that Judge Coby was not "neutral and detached."

The Fourth Amendment requires that a warrant be issued by a "neutral and detached magistrate." *Lo-Ji Sales Inc. v. New York*, 442 U.S. 319, 327 (1979). The magistrate need not be an attorney. *See Shadwick v. City of Tampa*, 407 U.S. 345 (1972). Because warrants "are issued on the basis of nontechnical, common-sense" standards that are "less demanding than those used in more formal legal proceedings," *see Illinois v. Gates*, 462 U.S. 213, 235 (1983), they may be issued by lay-persons who are politically appointed, even with no term of office specified. *See Shadwick*, 407 U.S. at 351.

The Supreme Court has found an impermissible lack of neutrality in cases where the particular magistrate was also involved in law enforcement activities, had a pecuniary interest in the outcome of his decision, or had "wholly abandoned" his or her judicial role. *See United States v. Heffington*, 952 F.2d 275, 278 (9th Cir. 1991) (reviewing Supreme Court case law). In *Heffington*, the defendant urged the Court to assume that the magistrate who issued the warrant had gained impermissible knowledge about the case from his prior representation

**Order – page 4**

of a co-defendant in another case. The Circuit declined the invitation, finding that it swept too broadly: "Assuming that an appearance of partiality may lurk in the fact that judges and police officers in rural counties often know more about the local criminal recidivists . . . than their more urban colleagues, we are not prepared to disqualify small-town judges on demand." *Id.* at 279. The Court went on to hold that the judge's prior representation of a co-defendant in another case was not so "extreme" that it constituted a constitutional violation. *Id.*

These authorities set the standard for determining if the Tribal Judge was neutral and detached. Of course, to be entitled to compulsory process under the Sixth Amendment, Wahtomy need only make a plausible showing that the information sought would establish that Judge Coby was not neutral and detached.

Aligning these legal standards with the three areas into which Wahtomy wants to inquire of Judge Coby demonstrates that Wahtomy has not made the plausible showing necessary to obtain compulsory process under the Sixth Amendment. Wahtomy has made no plausible showing – actually no showing whatsoever – that Judge Coby is unqualified, involved with law enforcement, or has a pecuniary interest in the case. Indeed, her lack of qualifications would be irrelevant under the case law discussed above.

While the Court is somewhat more concerned about Judge Coby being the

**Order – page 5**

daughter of the Wahtomy's deceased ex-wife, he has shown nothing to indicate that by virtue of that relationship, Judge Coby is biased against him or harbors some animus toward him of any kind. As the cases discussed above hold, the mere fact of the relationship is not sufficient. This is especially true in a small and tight-knit community like the Shoshone-Bannock Reservation where all Tribal members are – by virtue of their Tribal membership – related by blood. If a mere relationship satisfied the "plausible showing" requirement, the Tribal Judges would be subpoenaed each time they issued a warrant against a Tribal member that ended up in Federal Court. More is needed, and Wahtomy has provided nothing beyond an assertion that Judge Coby is Wahtomy's step-daughter. That is not sufficient.

Because Wahtomy has not made the threshold showing to raise a potential constitutional issue, there is no conflict between Tribal sovereign immunity and the Sixth Amendment. The absence of conflict would distinguish this case from *United States v. Snowden*, 879 F.Supp. 1054 (D.Ore. 1995), cited by Wahtomy. There, defendant Snowden was charged with sexual assault. He served a subpoena on the Confederated Tribes seeking counseling records pertaining to the victim's treatment for alcoholism. The court rejected the Confederated Tribes' claim of sovereign immunity, finding that Snowden had a "substantial need to

**Order – page 6**

effectively challenge the recollection and credibility of the [victim] who has given inconsistent statements of the events and who was extremely intoxicated at the time of the alleged assault," and that this outweighed the Confederated Tribes' right to sovereign immunity. *Id.* at 1058. The court noted that the Confederated Tribes had not identified what interest they had in protecting the records beyond the privacy interest of the victim. *Id.* at 1057. Her privacy interest was tenuous at best because she had previously released her own records. *Id.* at 1057-58.

In contrast, the sovereign immunity rights in this case are much stronger, as the subpoenas seek to inquire into the integrity of the Tribal Court system. Moreover, Wahtomy has not yet made a plausible showing of materiality to the extent present in *Snowden*.

Wahtomy argues that the Tribes have blocked his ability to collect evidence to satisfy his burden to make a plausible showing. The Court disagrees. The record reveals that Tribal counsel offered to stipulate to facts but that defense counsel did not follow through on that offer.

For all these reasons, the Court will grant the motions to quash. Wahtomy is certainly not precluded from serving new subpoenas – and re-arguing this issue – if he comes up with evidence sufficient to satisfy the "plausible showing" standard. However, at this point, he has not met that standard.

**Order – page 7**

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motions to quash (docket nos. 36 & 38) are GRANTED.



DATED: **October 23, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge